IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

DAVE WATERS,                      *
                                  *
          Plaintiff,              *
                                  *
     v.                           *          CV 110-139
                                  *
ERIK SHINSEKI, Secretary,         *
Department of Veterans Affairs,   *
                                  *
          Defendant.              *

---

### O R D E R

---

Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. no. 30.) For the reasons set forth below, this motion is **GRANTED**.

### I. BACKGROUND

#### A. Factual Background

This case arises from Plaintiff's termination from his position as a nurse manager at the Department of Veterans Affairs ("VA") Medical Center ("Medical Center") in Augusta, Georgia. On March 3, 2006, Plaintiff applied for a position as a nurse at the Medical Center by filling out the appropriate application form, VA Form 10-2850a. (Def.'s Ex. A.)[1] On this application, Plaintiff indicated that he held an Associate's Degree in Nursing ("ADN") from Miami Dade Community College, a

---

[1] Defendant's exhibits may be located at Docket Entry 30 in this case.

Bachelor of Science in Nursing ("BSN") from Graceland College, and a Master's in Business Administration ("MBA") from Concordia College & University ("Concordia"). (Id.) In submitting the application, Plaintiff certified that "all of [his] statements are true, correct, complete, and made in good faith." (Id.) Along with the employment application, Plaintiff provided a resume which listed his ADN, BSN, and MBA, as well as a transcript from Concordia. (Def.'s Exs. B & C.) According to the transcript, Plaintiff attended Concordia from 2003 until 2005, during which time he enrolled in eighteen different courses and attained a total grade point average of 3.5. (Def.'s Ex. C.)

On June 25, 2006, the Medical Center hired Plaintiff as head nurse. This appointment was an "excepted appointment" pursuant to 38 U.S.C. § 7405(A)(1). (Def.'s Ex. D.) After being hired, Plaintiff signed and submitted a Standard Form 85 ("SF 85"). (Def.'s Ex. E.) The SF 85 is a questionnaire used by the VA to conduct background investigations on new employees. This form required Plaintiff to list the schools he attended beyond Junior High School, beginning with the most recent and working back five years. (Id.) Despite listing his MBA from Concordia on his employment application, Plaintiff did not list it on the SF 85 and instead listed only his ADN from Miami Dade Community College and his BSN from Graceland College. (Id.)

On November 28, 2006, the VA's Professional Standards Board reviewed Plaintiff's records, including his MBA from Concordia,

and recommended that his appointment be converted from a temporary one to a "full time probationary appointment." (Def.'s Ex. F.) Plaintiff's appointment was thereafter converted to an "excepted appointment" pursuant to 38 U.S.C. § 7401(1). (Def.'s Ex. G.) The new appointment subjected Plaintiff to a two year probationary period that commenced on January 21, 2007. (Def.'s Exs. G & H.)

### 1. Charge of Discrimination

In early 2007, a nurse in Plaintiff's unit accused him of sexual harassment. (Def.'s Ex. J.) As a result, an Administrative Investigative Board ("AIB") conducted a thorough investigation into the facts and circumstances surrounding the allegation. (Id.) The AIB ultimately concluded that Plaintiff's conduct did not rise to the level of sexual harassment. Despite this finding, Debra Williams, Plaintiff's then supervisor, reassigned him from his position as nurse manager to the position of staff nurse. (Def.'s Ex. K.) In justifying her decision, Williams stated:

> [A]lthough you did not engage in sexual harassment, you did not demonstrate an understanding or appreciation that an employee may have found your actions to have been objectionable. You were neither apologetic nor contrite about the impact of your actions upon a subordinate employee. In addition, you failed to show a complete appreciation for the Department of Veteran Affairs' zero tolerance policy for sexual harassment.

(Id.)

Plaintiff subsequently contacted an Equal Employment Opportunity ("EEO") counselor and made a formal charge of discrimination regarding his reassignment. The charge resulted in a settlement agreement which reinstated Plaintiff to his supervisory position as head nurse. (Def.'s Ex. M.)

2. Termination

On April 14, 2008, the Medical Center received a letter from the Office of Personnel Management ("OPM") regarding concerns about degrees from "diploma mills." (Def.'s Ex. O.) The letter stated as follows:

> The Office of Personnel Management (OPM) has provided guidance to Federal departments and agencies regarding businesses that sell suspect educational degrees and credentials, also known as "diploma mills." These suspect degrees may not be used to qualify for Federal jobs or salaries. . . . Recently, OPM was contacted by a Department of Justice task force regarding the identity of an international diploma mill operation in Spokane, Washington. OPM's Federal Investigative Services Division has been working closely with the task force. We conducted a search of OPM's Security/Suitability Investigations Index. As a result, OPM identified the person shown on the enclosed form, who may be working for your agency, as having claimed a degree from this institution on their Federal employment application or background investigation forms.

(Id.) Plaintiff's name appeared on the enclosed form. (Id.)

As a result of this letter, James Bartlett, the adjudications coordinator at the Medical Center, conducted an investigation into Plaintiff's MBA from Concordia. (Bartlett Dep. at 13-32.) Terrence Peede assisted Bartlett with the adjudication inquiry. (Peede Dep. at 6-9.) On April 23, 2008,

4

Bartlett and Peede met with Plaintiff in person to discuss his MBA from Concordia. (Bartlett Dep. at 17.) Plaintiff explained that he never attended a single class at Concordia, either in person or online. (Pl.'s Ex. 5.)[2] Instead, he earned credit through work, life, and military experience. (Id.) He also admitted that he paid a fee to Concordia and submitted certain required documents. (Id.) In exchange, Concordia provided him with both a degree and a transcript. (Id.) Plaintiff denied listing the MBA on his application in an effort to gain a competitive advantage. (Id.) Plaintiff believed that while Concordia was not accredited by a source commonly recognized by the VA, it did hold international accreditation.[3] (Id.)

On May 2, 2008, Rebecca Wiley, director of the Medical Center, provided Plaintiff written notice of a proposed "pre-employment suitability" action against him based on the fact that he "provided false information regarding [his] educational achievement during the employment process." (Def.'s Ex. P.) Wiley explained that based on Plaintiff's conversations with Bartlett and Peede, "the medical center alleges that you intentionally supplied incorrect information that you had a legitimate degree and that you attended Concordia University on your VA Form 10-2850a and your resume with the intent to deceive or mislead the agency." (Id.) The notice also advised

[2] Plaintiff's Exhibit 5 is attached to the deposition of James Bartlett.

[3] Concordia is listed as an "International Graduate School recognized and accredited by the Government Ministry of Education of Indonesia, Liberia, and Pakistan and by the National Academy of Higher Education, Washington DC." (Def.'s Ex. C.)

5

Plaintiff that he could respond to the allegations "orally and/or in writing to the Professional Standards Board or directly to" Wiley. (Id.)

On May 22, 2008, Plaintiff responded to the proposed action. (Def.'s Ex. Q.) In his letter, Plaintiff indicated that he obtained a degree from what he believed to be an accredited program. (Id.) Moreover, he explained that his failure to list the Concordia MBA on the SF 85 was an oversight. (Id.) Despite Plaintiff's response, Wiley ultimately decided that Plaintiff should be terminated from his position for pre-employment suitability reasons. (Def.'s Ex. R.)

In making her decision, Wiley invoked 5 C.F.R. § 731, a provision granting her the authority to conduct suitability investigations. (Wiley Dep. at 27.) 5 C.F.R. § 731 includes a list of criteria that allows an employer to terminate an employee for suitability reasons. One of these factors, and the factor relied on by Wiley, is a "material, intentional false statement, or deception or fraud in the examination or appointment." 5 C.F.R. § 731.202(b)(3). Wiley stated that Plaintiff's "assertion that [he was] unaware [his] degree was not a valid degree is implausible" given that he "paid a sum of money for a degree without doing any class work and submitted a transcript that reveals grades for courses which [he] did not attend." (Def.'s Ex. R.) Wiley also explained that "[a] reasonable person is aware an individual cannot receive a legitimate Master's degree from an accredited institution of

higher learning based on the mere submission of transcripts from another college and documentation of military experience." (Id.) In conclusion, Wiley noted that Plaintiff "intentionally chose to misrepresent [his] educational qualifications to gain an unfair advantage over others" and that it "is not in the best interests of [the] medical center to continue [his] employment." (Id.) She informed Plaintiff that in accordance with VA Handbook 5021, Part VI, Paragraph 11d, he was not entitled to an appeal or to have his pre-employment separation reviewed. (Id.) If, however, Plaintiff believed that his termination was based on discrimination, he could contact an EEO counselor within forty-five days from the date of her decision. (Id.)

## B. Procedural Background

On June 18, 2008, Plaintiff contacted an EEO counselor regarding his termination. After the EEO counselor was unable to resolve the case informally, Plaintiff filed a formal complaint of discrimination alleging that he was terminated (1) based on his gender and (2) for filing his 2007 charge of discrimination. (Am. Compl. Ex. A.) Plaintiff also requested a hearing before an EEOC administrative law judge ("ALJ"). (Id.) On January 6, 2009, Defendant filed a motion for summary judgment, and the ALJ subsequently heard oral argument on the issues. (Am. Compl. Exs. B & D.)

On January 29, 2012, after considering the merits of Plaintiff's gender discrimination and retaliation claims, the ALJ granted summary judgment in Defendant's favor. (Am. Compl.

Ex. E.)  She found that Plaintiff could not establish a prima facie case of gender discrimination because he could not show that "there was anybody similarly situated outside of his protected classification that was treated more favorably." (Id. at 27.)  Even if Plaintiff could establish a prima facie case, the ALJ noted that Defendant put forth nondiscriminatory reasons for the termination, and Plaintiff could not establish that those reasons were pretextual. (Id. at 29.)  With regard to the retaliation claim, the ALJ found that, like the discrimination claim, Plaintiff could not establish that Defendant's reasons for the termination were pretextual. (Id. at 33.)  On March 22, 2012, Plaintiff appealed the ALJ's decision, which the VA Office of Employment Discrimination Complaint Adjudication subsequently affirmed. (Am. Compl. Exs. G & H.)

On October 25, 2010, Plaintiff timely filed suit in this Court alleging a violation of 42 U.S.C. § 2000e-1 et seq. (Doc. no. 1.)  Specifically, Plaintiff alleges that he was terminated based on his gender and as a result of filing his 2007 charge of discrimination.  On October 27, 2011, Defendant moved for summary judgment on Plaintiff's Title VII claims. (Doc. no. 30.)

## II.  SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels, 941 F.2d 1428, 1437 (1991) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is

entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrate[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant

must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave Plaintiff appropriate notice of the motion for summary judgment and informed him of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. no. 31.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

## III. DISCUSSION

Plaintiff contends that he was discriminated against in violation of Title VII. He claims that he was terminated (1) on account of his gender and (2) in retaliation for filing a charge of discrimination in 2007. Defendant asserts that Plaintiff cannot establish a prima facie case of discrimination and retaliation, and even if he could, Defendant put forth legitimate nondiscriminatory reasons for the termination. Plaintiff, however, contends that Defendant's reasons were pretextual, and thus there is a question of material fact. These arguments are discussed in detail below.

## A.  Gender Discrimination

Under 42 U.S.C. § 2000e-2(a)(1), employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  To establish liability under § 2000e based entirely on circumstantial evidence, as is the case here, a plaintiff must first demonstrate a prima facie case of disparate treatment.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  To do this, the plaintiff must show that "'(1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated female employees more favorably; and (4) he was qualified to do the job.'"  Cuevas v. Am. Exp. Travel Related Servs. Co., 256 Fed. Appx. 241, 243 (11th Cir. 2007) (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)).  Once the plaintiff establishes a prima facie case, the defendant carries the burden of producing some "'legitimate, nondiscriminatory reason'" for the adverse employment decision.  Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1556 (11th Cir. 1995) (quoting Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  Once this burden is carried, the plaintiff, by a preponderance of the evidence, must prove that the employer had a discriminatory intent.  Id. (citing Burdine, 450 U.S. at 256).

In the instant case, the parties agree that Plaintiff satisfies all elements of his prima facie case with the exception of the third element: that similarly situated female employees were treated more favorably. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Maniccia, 171 F.3d at 1368 (quoting Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998), opinion modified by 151 F.3d 1321 (11th Cir. 1998)). In making this determination, the most important facts are the nature of the offenses committed and the nature of the punishments imposed. Id. While an exact correlation is not required, the quantity and quality of the comparator's conduct should be nearly identical so that the Court does not second-guess the employer's reasonable decisions and confuse apples with oranges. Id. (citing Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1998)).

In support of his claim that he was terminated based on his gender, Plaintiff identifies two individuals as comparators: Michael Aiello and Angela Brown. Aiello, however, is not a proper comparator because he is a member of Plaintiff's protected class. Thus, Aiello's misconduct and the resulting consequences are irrelevant to this Court's similarly situated

analysis.    Brown, like Plaintiff, was terminated from her
position at the Medical Center after listing a degree from a
"diploma mill" on her employment application.    Brown admitted
that she sent Hartland University/Saint Regis University
approximately $100.00 and, in return, received a diploma and an
official transcript.    (Def.'s Ex. U.)    Although Brown believed
her degree was valid, James Trusley, the associate director of
the Medical Center at the time of her termination, found this
belief implausible and terminated Brown as a result.    In
justifying his decision, Trusley stated:

> [She] paid a sum of money for a degree without doing
> any work and bought a transcript that shows grades for
> courses which [she] did not attend.    A reasonable
> person is aware that an individual cannot receive a
> legitimate bachelor's degree from an accredited
> institution of higher learning based on the mere
> submission of transcripts from another college and
> documentation of military experience. . . . The fact
> that you received a grade for classes that you never
> attended but were listed on your allegedly official
> transcripts should have been a clear indication to you
> that this degree was bogus.

(Id.)

Brown, therefore, is not a proper comparator because the
Medical Center terminated her for engaging in the same conduct
as Plaintiff.    In order to be similarly situated, Plaintiff must
establish that Brown engaged in the same conduct, but was
treated differently, something he simply cannot do.    Because
Plaintiff failed to put forth a prima facie case of gender

14

discrimination, Defendant is entitled to summary judgment on this claim.

## B.   Unlawful Retaliation

Under 42 U.S.C. § 2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees. . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ."   To establish a prima facie case of retaliation, a plaintiff "must show:   (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events."   Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997) (citing Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994); E.E.O.C. v. Ohio Edison Co., 7 F.3d 541 (6th Cir. 1993); Archuleta v. Colo. Dept. of Insts., 936 F.2d 483 (10th Cir. 1991)).   If plaintiff establishes a prima facie case, the employer faces the burden of articulating some legitimate, non-retaliatory reason for the adverse employment action.   Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) (citing Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)).   If the defendant articulates such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's reason for the

adverse employment action is mere pretext for unlawful retaliatory conduct. Id. (citing Olmsted, 141 F.3d at 1460).

### 1. Prima Facie Case

Plaintiff has established the first two elements of his prima facie retaliation claim. First, his 2007 charge of discrimination constitutes a statutorily protected expression, a fact admitted by Defendant. See Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001) ("Statutorily protected expression includes internal complaints of harassment to superiors, as well as complaints filed with the EEOC.") Second, Plaintiff's termination is an adverse employment action.

The parties, however, dispute whether Plaintiff can demonstrate the third element of his prima facie case. Defendant contends that eleven months elapsed between the charge of discrimination and Plaintiff's termination. This time period, according to Defendant, is insufficient to establish the requisite causal connection necessary for a retaliation claim. Plaintiff agrees with the assertion that the temporal proximity alone is insufficient, but argues that intervening acts bridged the causation gap.[4] Despite this conflict, the Court will assume *arguendo* that Plaintiff established a prima facie case of

---

[4] Plaintiff's brief in response to Defendant's motion for summary judgment provides little guidance with regard to the third element of the prima facie case. Plaintiff argues, without citing any authority, that "the evidence of the illegality of the final action . . . bolster[s] the temporal proximity." (Doc. no. 39 at 6.) The Court, for the purpose of simplicity, concludes that Plaintiff relies on the extension of his probationary period, as well as other actions surrounding his termination, to demonstrate the requisite causal connection.

retaliation. Therefore, the only questions remaining are whether Defendant put forth non-retaliatory reasons for Plaintiff's termination and whether Plaintiff can establish that those reasons were pretextual.

### 2. Pretext

In this case, Defendant put forth non-retaliatory reasons for Plaintiff's termination. Specifically, Defendant terminated Plaintiff because he listed a degree from a non-accredited university on his employment application and failed to include that degree on his SF 85. Defendant also established that the impetus for the termination was a letter from the OPM expressing concerns that Plaintiff's MBA came from a "diploma mill" and requesting further action from Defendant.

The burden therefore shifts to Plaintiff to establish, by a preponderance of the evidence, that these reasons were pretext for retaliation. In order to show pretext, Plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision." Burdine, 450 U.S. at 256. "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. The plaintiff may demonstrate that an employer's reason is pretextual by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered

17

legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted).

In this case, Plaintiff claims that Defendant's reasons were pretextual because (1) Plaintiff's position did not require an MBA; (2) there was no employment rule or regulation prohibiting diplomas from unaccredited universities, and (3) Plaintiff did not make a false statement on his employment application. Wiley explained that pursuant to 5 C.F.R. § 731, she terminated Plaintiff for submitting a *false* statement on his employment application. However, Plaintiff in fact received an MBA from Concordia, and thus listing the MBA did not amount to a *false* statement.[5] Wiley admitted as much in her deposition when she stated that listing the MBA from Concordia "was not false, but the fact that the university was not accredited made the degree invalid." (Wiley Dep. at 39-40.) Plaintiff correctly describes his situation as a "catch 22" because, as Wiley explained, Plaintiff would have been terminated regardless of whether he included the MBA on his employment application

---

[5] The Court does, however, note that Plaintiff's statement that he attended Concordia between 2003 and 2005 could be construed as a false statement. Plaintiff did not attend a two-year program, but instead he made a lump sum payment and was awarded an MBA as a result.

because he had a degree from an unaccredited university.[6] (Wiley Dep. at 44-45.)

An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a retaliatory reason. Alvarez v. Royal Atl. Developers, 610 F.3d 1253, 1266-67 (11th Cir. 2010). Even if Wiley's reliance on 5 C.F.R. § 731 was misplaced, "Title VII does not proscribe mistakes, just discrimination." Chambers v. Walt Disney World Co., 132 F. Supp. 2d 1356, 1359 (M.D. Fla. 2001). Here, Plaintiff merely challenges the wisdom of Defendant's decision, and he fails to put forth any evidence, other than mere conjecture, that the reason was retaliatory. Besides, the evidence establishes that regardless of 5 C.F.R. § 731, Wiley nonetheless fired Plaintiff because his MBA was from a "diploma mill."

Moreover, the impetus for the termination came from the OPM and DOJ, *not* from any individual within the VA. Wiley expressly stated that she did not harbor any retaliatory animus towards Plaintiff based on his prior charge of discrimination. (Wiley Decl. ¶ 9.) There is nothing to suggest that the Medical Center

---

[6] It also appears that Wiley terminated Plaintiff for *failing* to list his MBA on the SF 85. When asked what inaccurate information appeared on the SF 85 to justify termination for pre-employment suitability reasons, Wiley stated that Plaintiff failed to include information. (Wiley Dep. at 26-30.) She explained that "because [Plaintiff] stated that he had a master's degree from Concordia University, he should have listed it on [the SF 85]." (Id. at 31.) Thus, according to Wiley, *failure* to include his MBA was also a false statement that warranted termination.

took action against Plaintiff for any reason other than that it was notified by the OPM that Plaintiff claimed to hold an MBA from a "diploma mill."

To the extent that Plaintiff attempts to demonstrate pretext by suggesting that other employees were treated more favorably in terms of appellate rights, this argument must also fail.[7] Plaintiff argues that he was not entitled to appeal his

---

[7] In support of this argument, Plaintiff claims that "Wiley terminated [him] in spite of a clear and unambiguous regulation requiring that she notify [him] of his right to appeal." (Doc. no. 32 at 5.) Plaintiff contends that this denial of appellate rights demonstrates Wiley's discriminatory and retaliatory animus because "she took extraordinary and illegal steps to violate his employment protections." (Id. at 11.)

Based on this statement, Plaintiff may be attempting to argue that the denial of his appellate rights is a separate claim of discrimination and retaliation. Therefore, the Court must determine whether Plaintiff may assert such a claim at this stage of the proceedings.

"The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action." Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000). Similarly, for federal sector employees, the applicable process requires "a complaining party to pursue administrative relief prior to court action, thereby encouraging more expedient, less formal, and less expensive resolution of disputes within the Federal Government and outside of court." West v. Gibson, 527 U.S. 212, 218-19 (1999). Thus, a federal sector complainant must "initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The purpose of this requirement is that the [EEO] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" that the plaintiff filed with the EEOC. Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994). More specifically, judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the administrative complaint, but not if they allege new acts of discrimination. Gregory, 355 F.3d at 1279 (emphasis added).

Plaintiff, in his administrative complaint, alleged that he was "singled out for selective punishment based on the false charge that he committed a fraud." (Am. Compl. Ex. A.) Nowhere in his administrative complaint does Plaintiff reference the denial of appellate rights, and the ALJ did not address that claim in her order. The denial of Plaintiff's

termination, whereas other employees were given the opportunity to appeal to the Merit Systems Protection Board. In response, Defendant presented evidence that Plaintiff was employed pursuant to 38 U.S.C. § 7401(1). (Def.'s Ex. G.) Pursuant to the VA Handbook 0710, "suitability determinations and procedural protections for Title 38 . . . employees appointed under 38 U.S.C. . . . § 7401(1) . . . are outlined in VA Directive and Handbook 5021 . . . ." (Handbook 0710 at ¶ 12a(1)(a).) VA Handbook 5021 grants employees the option of having their cases reviewed by either a Professional Standards Board or the facility Director, in this case Wiley. (Id. ¶ 11b(1) & 11b(2)(c)(1).) As outlined in her letter to Plaintiff, Wiley presented this option to Plaintiff, and he chose to respond directly to her rather than to the Professional Standards Board. (Def.'s Exs. P & Q.) VA Handbook 5021 further provides that once the approving official makes a decision regarding termination, "there shall be no further appeal or review." (Handbook 5021, Part VI, ¶ 11d.)

---

appellate rights does not amplify or clarify the original claim contained in the administrative complaint, i.e., that his *termination* was retaliatory and discriminatory. Instead, the denial of Plaintiff's appellate rights is a *new and separate* act, and thus Plaintiff was required to raise it administratively. Because Plaintiff failed to exhaust his administrative remedies, this claim must fail as a matter of law. See Chanda, 234 F.3d at 1225 ("Nothing in [the plaintiff's] EEOC filing mentions discrimination based on national origin, any complaint about such discrimination, or a claim under Title VII. We must conclude, therefore, that a reasonable investigation based on the EEOC charge did not and would not encompass retaliation based on complaints about national origin discrimination.").

Based on this evidence, it appears that the proper procedures were followed in denying Plaintiff the right to appeal, and that Plaintiff, as an employee pursuant to 38 U.S.C. § 7401(1), was not entitled to appeal to the Merit Systems Protection Board. Plaintiff has not presented any evidence to show otherwise, nor has he established that the identified individuals who *were granted* appeals by the VA were also Title 38 employees. Therefore, he cannot establish that similarly situated individuals were treated more favorably in terms of appellate rights. Because Plaintiff has not carried his burden of presenting a genuine issue of fact with regard to pretext, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV. CONCLUSION

Based upon the foregoing, Defendant's Motion for Summary Judgment (Doc. no. 30) is **GRANTED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendant. The Clerk shall terminate all deadlines and motions, and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of August, 2012.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA